## In re Anonymous Nos. 7 D.B. 86 and 22 D.B. 87

Disciplinary Board Docket nos. 7 D.B. and 22 D.B. 87.

ECKELL, *Member*, October 11, 1988—Pursuant to Rule 208(d), Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petitions for discipline.

## HISTORY OF PROCEEDINGS

The initial petition for discipline (7 D.B. 86) was filed on February 24, 1986. The petition alleged that respondent had violated seven disciplinary rules by his failure to file an appellate brief in a timely manner, causing his client's bail to be revoked resulting in incarceration. At the bail revocation hearing, respondent made misrepresentations regarding the reasons for his delay in filing the brief. The seven disciplinary rules allegedly violated were as follows:

(A) D.R. 1-102(A)(4), prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

(B) D.R. 1-102(A) (5), prohibiting an attorney from engaging in conduct that is prejudicial to the administration of justice;

(C) D.R. 1-102(A) (6), prohibiting an attorney from engaging in conduct that adversely reflects on the attorney's fitness to practice law;

(D) D.R. 6-101(A) (3), prohibiting an attorney from neglecting a legal matter entrusted to him;

(E) D.R. 7-101(A) (1), prohibiting an attorney from intentionally failing to seek the lawful objectives of his client;

(F) D.R. 7-101(A) (2), prohibiting the intentional failure to carry out a contract of employment; and

(G) D.R. 7-101(A) (3), prohibiting an attorney from intentionally prejudicing or damaging the interests of his client during the course of the professional relationship.

The matter was referred to Hearing Committee [   ]. A hearing was convened on September 26, 1986 following which briefs were submitted.

In its brief, petitioner argued that respondent's failure to file the appellate brief, based on his claim that he had not received the full amount of his fee, constituted a failure to seek the lawful objectives of his client and a failure to complete a contract of employment. Petitioner argued that seeking leave to withdraw would have been the only proper way for respondent to be relieved of his duty to represent the complainant. Further, petitioner argues, respondent had, in effect, withdrawn without leave through his inaction. Lastly, petitioner contends that respondent had violated the disciplinary rules by making misrepresentations to the courts, the disciplinary board, and his client.

Respondent argues that complainant lost none of his rights as a result of respondent's conduct because: (1) complainant withdrew the appeal himself; (2) complainant had no absolute right to remain free pending appeal; and (3) the Superior Court granted extensions for filing the appellate brief late and accepted it late. Respondent also contends that complainant was found to be less than credible during the Post Conviction Hearing Act proceedings. Finally, respondent argues that he was protecting his client when he made the misrepresentations to the court.

A second petition for discipline (22 D.B. 87) was filed on April 9, 1987. The petition charges respondent with violating two disciplinary rules. Respondent represented a client seeking recovery for property damages to his motorcycle. Respondent was able to obtain the settlement check payable to respondent based on an agreement with the insurance company and a creditor's lawyer that he would satisfy an

encumbrance of $1,500 on the title by disbursing the lien to the creditor's lawyer before disbursing to respondent's client. He breached the agreement and disbursed to the client.

Based on the above, it is alleged that respondent violated D.R. 1-102(A) (4), prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and D.R. 1-102(A) (6), prohibiting an attorney from engaging in conduct that adversely reflects on the attorney's fitness to practice law.

The matter was referred to Hearing Committee [    ] to be consolidated with the previous petition for discipline. Following the referral of this matter to the hearing committee, respondent filed an answer to the petition for discipline. A hearing was held on November 17, 1987, at which evidence was received relating to the alleged infraction. An additional hearing was held on January 13, 1988, to determine the discipline to be imposed.

In the brief to the hearing committee, petitioner argued that an attorney has a fiduciary responsibility to a nonclient regarding a claim to funds in the possession of the attorney. Petitioner argued that respondent was put on notice that there was a lien on the proceeds but failed to recognize the lien. In arguing for a one year suspension, petitioner advanced the disciplinary record of the respondent, the various aggravating factors, and similar cases imposing suspensions.

In his brief to the hearing committee, respondent argued that he received no proof of the lien and, in any event, should not be disciplined for actions that would only give rise to civil liability. On the issue of discipline, respondent argued that suspension was inappropriately harsh, distinguishing the cases advanced by petititioner in support of suspension.

The report of Hearing Committee [      ] was filed on July 25, 1988. Regarding the first petition for discipline, the hearing committee concluded that respondent intentionally failed to advance his client's case, lied repeatedly, and was not relieved of his duty to prosecute the case without securing leave to withdraw. Regarding the second petition, the hearing committee concluded that respondent had agreed to protect the lien of complainant and the check for the insurance proceeds was released in reliance upon this agreement. Based upon these conclusions the hearing committee found that respondent had violated D.R. 1-102(A)(4) in both charges, D.R. 1-102(A)(5), D.R. 1-102(A)(6) in both charges, D.R. 7-101(A)(1), D.R. 7-101(A)(2), and D.R. 7-101(A)(3). The hearing committee recommended that respondent be suspended from practice for a period of one year. The hearing committee concluded that respondent was obligated to proceed in a timely fashion until proper withdrawal and that his misrepresentations were below the standard of conduct expected from a member of the Pennsylvania bar. Regarding the second charge, the hearing committee found that the evidence proved respondent breached his promise to two attorneys. The hearing committee also noted the prior disciplinary record of repondent as a factor to be considered in imposing discipline.

This matter was adjudicated at the September 9, 1988, meeting of the disciplinary board.

## FINDINGS OF FACT

### Charge I - 7 D.B. 86

(1) Complainant [A] was convicted of aggravated assault in the Court of Common Pleas of [ ] County, Pennsylvania, and was sentenced to jail.

(2) Following complainants conviction, respondent appeared at complainant's sentencing on August 14, 1981, and entered his appearance on behalf of complainant and filed an appeal to the Superior Court.

(3) Complainant remained free after posting bail in the amount of $25,000 pending the appeal.

(4) Complainant paid respondent the sum of $500 for his services by checks dated June 13, August 14 and September 14, 1981, and thereafter made no additional payments. Respondent alleges that there was an agreement that his fee would be $1,000 and complainant states that no such amount was stated or agreed upon.

(5) The Superior Court notified respondent that his brief would be due November 8, 1981.

(6) Respondent did not file a brief with the Superior Court on the required date or on a second required date. The brief was filed on August 10, 1982.

(7) On February 10, 1982, the commonwealth filed in the trial court a motion to revoke complainant's appeal bail for failure to perfect his appeal. At the hearing on February 25, 1982, respondent stated to the court that he had received permission from the Superior Court to file brief within 30 days. This statement was not true.

(8) In reliance on respondent's statement, the court refused the commonwealth's motion to revoke bail without prejudice to its right to renew it if the brief was not filed within 30 days.

(9) After the argument, respondent assured complainant that the brief would be filed and that he would take care of the matter.

(10) Respondent took no further steps to file the brief and on March 30, 1982, the commonwealth filed a second motion to revoke bail. Argument on

the commonwealth's motion was held on April 16, 1982.

(11) Respondent did not attend the April 16 hearing, but arranged for attorney [B] to appear in his place. Attorney [B] advised the court that he had been contracted first by the respondent on the previous day to handle the matter and that he was told by respondent either that the brief was at the printer's or that it could be sent in a very short time. Based on this information, [B] advised the court that the brief was "right now at the printer's and would be filed in a few days."

(12) The commonwealth's motion to revoke bail was approved by the court and complainant was incarcerated. Thereafter, he and his wife by telephone had conversations with respondent and were told by him that he would file a brief and obtain complainant's release from imprisonment.

(13) On June 3, 1982, [C], the investigator with office of disciplinary counsel, met with respondent because of complaint by complainant. At that meeting respondent stated that his brief was complete and was then at the printer's. This was false since the brief was not taken to the printer's until July 21, 1982.

(14) In May and June 1982, respondent filed petitions with the Superior Court for permission to extend the time to file the brief. These were granted and he ultimately filed the brief on August 10, 1982.

(15) Respondent never withdrew or petitioned to withdraw his appearance on behalf of complainant in either the common pleas or Superior Courts nor did he inform complainant that he intended to withdraw.

(16) Complainant withdrew his appeal pro se on October 22, 1982, and petitioned to the Court of Common Pleas of [   ] County for a Post Conviction

Hearing Act (PCHA) hearing. The PCHA hearing was subsequently held on April 21, 1983, at which time respondent appeared as a witness for the commonwealth. The court dismissed the appeal.

(17) Complainant filed a civil suit against respondent which was settled by payment to complainant of the sum of $2,000 shortly before the September 26, 1986 hearing before the disciplinary board.

## Charge II - 22 D.B. 87

(18) During and prior to July 1982, respondent represented [E] in a personal injury and property damage claim against [F], arising out of an accident in which [E] was injured and his motorcycle damaged by [F's] car.

(19) The motorcycle which [E] was riding was titled in the names of himself and his wife and was encumbered by a $1,500 lien in favor of [D], the complainant.

(20) [D's] lien arose out of unpaid rent and an insufficient funds check claim against Mr. and Mrs. [E]. [D] was represented by [G], Esq., in attempting collection of the amounts due him.

(21) On or about May 18, 1982, attorney [G] contacted respondent and explained the claim against [E] and stated that he was considering filing a civil suit or bad check charge against [E] and requested that respondent not disburse any funds received as payment for the motorcycle damages unless agreed to by [D].

(22) On July 13, 1982, [G] and respondent had a telephone conversation in which respondent told [G] that he expected a settlement with [F's] insurance company and $1,500 would be retained out of the settlement and paid to [D]. Accordingly, re-

spondent requested, and [G] agreed, that he would not start a lawsuit which would result in additional costs to their respective clients.

(23) On August 5, 1982, [G] wrote a letter to respondent summarizing his understanding of their agreement and asking that respondent inform him if the statement of the agreement was correct. He received no response to this letter.

(24) [F] was insured by [H], represented by [I], Esq. On March 3, 1983, [G] wrote to [I] and notified him of [D's] claim against the proceeds, sending a copy of the letter to respondent.

(25) The *[E] v. [F]* case was settled and [I] notified [G] that payment was pending.

(26) During settlement negotiations between [I] and respondent, respondent acknowledged that he was aware of the [D] claim and told [I] that he would protect that claim with [G].

(27) On May 16, 1983, [G] wrote to respondent and to [I] confirming his understanding that [D's] claim for $1,500 would be paid out of the settlement funds held by [I], and requesting that a check for that amount be sent to him.

(28) When [I] received the check from his client's insurance carrier, the check was made out to [E] and the respondent; neither [D's] nor [G's] names were included.

(29) On June 5, 1983, respondent consulted with [G] and urged him to allow respondent to collect the check made out in his and his client's names only, to which [G] agreed based on assurances from the respondent that [D's] claim would be protected. This was agreeable to both parties because it would take several weeks to obtain a corrected check.

(30) In reliance on respondent's representations, [G] telephoned [I] and authorized release of the funds directly to respondent on the understanding

that his client's interest would be protected by respondent.

(31) [I] confirmed to [G] that the money was released to respondent on the understanding that the [D] claim would be paid by respondent out of the proceeds.

(32) In accordance with this understanding, [I] released the check for the entire claim to respondent on June 22, 1983.

(33) [G] requested by letter dated July 7, 1983, that respondent pay [D's] claim in accordance with the agreement.

(34) Respondent orally requested that [G] provide him with proof of [D's] claim and on July 15, 1983, [G] wrote to respondent to reassert the claim of [D], and enclosed a photocopy of the title of the motorcycle showing [D's] encumbrance.

(35) By check dated July 26, 1983, respondent paid the funds at issue to [E] without protecting [D's] claim.

(36) On July 1, 1985, [D] filed a civil action against respondent in the Court of Common Pleas for [ ] County. In this complaint, he sought damages in the amount of $1,500 plus interest, costs, attorneys fees, and punitive damages, for respondent's alleged breach of the agreement to protect [D's] claim.

(37) The suit filed by [D] against respondent was settled by agreement and mutual release dated June 23, 1986. The agreement provided that respondent would pay [D] $1,500, upon which [D] would satisfy the lien on the face of the title and return the title to respondent. This was done.

## DISCUSSION

This matter presents several issues that must be addressed. The first of these issues concerns con-

cerns the propriety of refusing to effectively represent a client until the client pays a fee after the attorney has undertaken representation.

In the [ A ] incident respondent admittedly refused to file a brief on behalf of his client until the client paid the balance of his fee to respondent. But respondent had undertaken the representation of [ A ] and he was, therefore, obligated by the Code of Professional Responsibility to effectively represent his client to the extent that was legally permissible unless and until he properly withdrew from that representation. Respondent elected not to pursue his client's legal interests in a timely manner. At the same time he made no effort to properly withdraw from the representation even though he did not intend to represent his client until he was paid.

The calculated neglect of a client's interest is prohibited not only by D.R. 7-101(A) (1), D.R. 7-101(A) (2), and D.R. 7-101(A) (3), but also by the Rules of Criminal Procedure and case law. As disciplinary counsel indicated, Rule 302 of the Pennsylvania Rules of Criminal Procedure requires an attorney to obtain leave of court before the attorney may withdraw from the matter. The court in *Spector v. Greenstein,* 85 Pa. Super. 177 (1925), stated that an attorney may not abandon representation of a client without leave of court and notice to the client. This is additional support for the finding that respondent's calculated neglect of the [ A ] matter was in violation of the disciplinary rules in that respondent never pursued the proper course for relieving his duty of zealous representation of [ A ]. Even if respondent had entered into a fee agreement with [ A ] providing that work was contingent upon payment of the fee respondent was still not excused from representing his client in accordance with the disciplinary rules.

Respondent's conduct in the [ A ] matter is further complicated by the misrepresentations that he made to his clients, the court, and an investigator for disciplinary counsel. These misrepresentations all stem from respondent's inaction in the [ A ] matter and his attempts to cover his inaction. These falsehoods, standing alone, were great enough to be in violation of the disciplinary rule prohibiting dishonesty and misrepresentation. Respondent also made misrepresentations to the court during proceedings in the [ A ] matter and resulted in prejudicing the administration of justice.

Even though the complainant suffered no detriment in the end, respondent's conduct is not representative of appropriate conduct for a lawyer. Aside from being ethically wrong, the refusal to process his legal assignment and the making of false statements is conduct that adversely reflects upon the lawyer and the legal profession as a whole.

In the [ D ] matter, respondent lied to the lien holder's lawyer; gave false assurances about payment of the lien on which there was detrimental reliance (forebearance to sue). Respondent went further. He also assured the attorney for the insurance company that he would honor [ D's ] interest in the insurance proceeds. Such conduct cannot be condoned.

Unlike the attorney in *In re Anonymous No. 71 D.B. 81* respondent did not alter a check and turn it over to a client. Alteration was not necessary because respondent had obtained a check for the entire amount of the insurance proceeds based on his assurances that [ D's ] interests would be protected. The insurance check was released in reliance upon respondent's false representations. Because of respondent's misrepresentations and false assurances

to the other attorneys, it is apparent that respondent has violated the disciplinary rules.

Respondent's prior disciplinary record of two informal admonitions and private reprimand indicate that respondent has not been rehabilitated. One of the informal admonitions followed respondent's failure to take action in a bankruptcy case. The private reprimand involved three separate cases in which respondent took no action but represented that he was taking action.

It is apparent that respondent has continued to ignore his duty to effectively represent his clients. It is also apparent that respondent will not hesitate to mislead his clients, other attorneys and even the courts. Furthermore, it is possible that respondent has been less than candid with the disciplinary board. Respondent claims that he had a fee agreement with [ A ] and claims that he knew nothing about the lien on the motorcycle title, contrary to the testimony of others and documentary evidence presented.

## RECOMMENDATION

Based upon the foregoing discussion, the disciplinary board recommends that respondent, [   ], be suspended from the practice of law for a period of one year. It is further recommended that, pursuant to rule 208(g), Pa.R.D.E., the court direct respondent to pay the necessary expenses incurred in the investigation and prosecution of these proceedings.

## ORDER

And now, November 2, 1988, upon consideration of the report and recommendations of the disciplinary board dated October 11, 1988, it is hereby ordered that [respondent] be and he is suspended

from the bar of this commonwealth for a period of one year, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.